Good morning, Your Honor. If it pleases the Court, Roll Godinez for the petitioner Jorge Mejia, and I would respectfully request to reserve four and a half minutes for rebuttal. Your Honor, there are four issues presented in this case, and these are all legal issues that need to be addressed by this Court. The first issue is whether or not the Attorney General acted in an ultra-virus manner in which he changed the standard for a 212-H. A second issue that is related to that is whether or not the application of that high-end standard, if proper, is appropriate in this matter, where the individual had not only already pled to the crime, but had already filed an application for relief pursuant to that crime, where or not this is depriving him of his cell expectations, and where or not this is an impermissive retroactive application. And finally, Your Honor, assuming that this standard is appropriate, the Attorney General and his regulations created a new term of art, violent or dangerous. In its analysis, the BIA does not look at violent or dangerous. The BIA refers to crime of violence or aggravated felonies, which are well-established principles in terms of art. However, in this instance, that was not the term the Attorney General chose to use. He chose to create a new standard, one that he created in matter of gene. So whether or not legally those are equivalent is an issue presented before this Court.  Sotomayor, I'm curious on your retroactive argument. Doesn't that analysis depend in part on whether or not someone who was contemplating a plea would be affected by the knowledge that the law was going to change? In other words, would he really have done anything differently if he had known the law was as it currently is? I believe he would, Your Honor. I believe here in the State of California, not to properly advise your client of the immigration consequences is malpractice. I think that is something that is taken too hard. And in this particular instance, Your Honor, his plea had occurred. It was a guilty conviction through a plea. What difference would there have been in the advice by competent counsel? He could have elected to go on to trial. Right. He could have. But what would be the difference? I mean, aren't we talking about just a slight change in the harshness of the rule? No, Your Honor. I think it would be a very significant change. This change is akin to the change Congress made in IRA-IRA to cancellation for nonpermanent residence, where it changed the standard from extreme hardship, the standard for 212H, to a new standard, the exceptional and extraordinary unusual hardship. So I think that change there is significant. And I think the change done by the attorney general in this instance is also a significant change. So it does materially affect his eligibility. And that would also be the case. He would still, I guess, one difference I saw perhaps between your case and Sonsier is that Mr. Mejia would still be eligible for relief even under the heightened standard. Is that correct? Yes, Your Honor. He would be eligible for relief. But the possibility of relief is drastically changed. Counsel, I did a search to see if I could find any cases interpreting Sonsier that if there was any door left open, it had to be a wide door. There aren't any cases. They all seem to turn on the fact that there is some potential for possible relief still open, even though on a heightened standard. And do you have any case? No, Your Honor. I apologize. I don't. I do believe this is an issue of first impression. And I think that's what we need to look at. What is the change? If we take a look at 212H, Congress is very explicit that the attorney general is not to grant this to an individual who has committed murder, to an individual who has committed torture. Further, for lawful permanent residents, the attorney general is not to grant it for an individual who has committed an aggravated felony or has not resided in the United States for seven years. The aggravated felony bar is not present for a non-lawful permanent resident. So in exercising the attorney general's discretion, Congress implicitly outlined what they expected the attorney general to look at. Now, in our circuit, we have this case of Pereira-Samaran that says that molestation of a child under 14 is always a crime of violence. And I'm not opposing that, Your Honor. I'm not looking to that. My point is the attorney general chose to follow Madera Jean. Yes. The standard that he focused on Madera Jean is the dangerous or violent standard, Your Honor. And in Madera Jean, that is a crime that the prophecy of the crime, the extraordinary seriousness of the injuries. The attorney general did not say crime of violence. So this may very well be a crime of violence. This may very well be an aggravated felony. But that does not make it a dangerous or violent crime as promulgated in the regulations and as addressed in Madera Jean. Well, perhaps you're drawing the line too fine, counsel. Well, I would think not, Your Honor. I would say many crimes of violence and many aggravated felonies will be included, but not absolutely all. If the attorney general wanted to, one is to presume the attorney general knows the law, he would have chosen those terms. One difficulty, of course, is that there's you would have us create a circuit split if we agreed with you in saying there wasn't this authority in Madera Jean because at least two other circuits have upheld the promulgation of these regulations, have they not? Yes, Your Honor. And I think that's what I am asking the court to do, but I think that the factual situation, legal situation in this case merits it. Just for your information, you're down to three plus minutes. Yes, Your Honor. With the court permission, I would like to save that time. Welcome back. Thank you. It's good to be back. It's always a pleasure. May it please the court, my name is Jeffrey Bernstein, still, and I represent still the attorney general of the United States. I mean, I think in talking about He's still the attorney general or you're still representing? Both. Both, Your Honor. Okay. Last I heard. Just checking. I think in talking about the ultra-virus argument, I think it's really useful to put this the regulation and the statute in its proper context. Section 1182H, the waiver provision, 212H, otherwise known as, provides that the attorney general may, in his discretion, waive the application of section 1182A2 if it is established to the satisfaction of the attorney general that extreme hardship will result from the deportation and the extreme hardship will go to a qualifying relative. Note that the statute provides that before the attorney general enters into his discretionary determination, it must be established that extreme hardship would accrue to a qualifying relative, or obviously an adjudicator could assume for purposes of argument that it does. So the discretionary, again, determination comes after he satisfies his burden of extreme hardship. Now, the regulation in question, 1212D7, does not apply to modify the statutory extreme hardship language at all. It rather applies to state that the attorney general will not exercise his discretion to waive the application of 1182A2 even if the applicant has established that a qualifying relative will experience extreme hardship, where the crime involved is violent or dangerous, unless denial of the application would result in exceptional and extremely unusual hardship. And I think it's relevant to point out that the exceptional and extremely unusual hardship doesn't by its terms specifically apply only to relatives, qualifying relatives, whereas the extreme hardship language in the statute applies to qualifying relatives. But in any event, in this context where discretionary determination doesn't come into play until after extreme hardship in the statutory provision is established, it's clear that the regulation is a proper exercise of the attorney general's authority. The regulation is not at all inconsistent with the statute because it deals only with the question when the attorney general, how the attorney general exercises his discretion after it is either assumed or proved that there has been extreme hardship. And, I mean, this court in Ayala versus, Ayala-Chavez versus INS, so found essentially in a similar case. In that case... I'm sorry, the name of that case was... Ayala-Chavez versus INS, and I believe it's cited in our brief, Your Honor. And in that case, the board had imposed a stricter standard for drug offenders for a particular waiver, not this particular waiver, for two reasons, because the AJ has... the attorney general has very broad discretionary authority, and because the standard that the board used rationally derived from the statute. Here, as I pointed out, the attorney general's discretionary authority, his broad discretionary authority, is the only matter implicated in this regulation. And here, the distinction between violent and dangerous criminal offenses is rationally related to a national immigration policy of not admitting aliens who would be a danger to society. And Congress certainly has expressed that, very recently, most recently, denying this Court's review to aggravated felons and other dangerous criminals. And not dangerous criminals as well, but certainly dangerous criminals. So clearly, under Ayala-Chavez, this regulation passes muster. The Court... Your Honor? I'm just anxious for you to get to the retroactivity issue. I was just starting on that. The Court should reject the contention that the regulation is impermissibly retroactively. First, the Petitioner didn't exhaust this issue, so the Court doesn't have jurisdiction to consider it. And we've cited cases in which the board has considered retroactivity issues, so he was under an obligation to... Is that a constitutional issue, the retroactivity? It is not in this case, no. It is not. There is no allegation that the retroactivity was... The alleged retroactivity violated his constitutional rights. He did allege before the agency that it was a due process violation, but he's abandoned that here. He doesn't contest it in his brief on appeal. Alternatively, the claim fails on its merits because the regulation does not impair any vested rights. It only relates to the Attorney General's discretion. It only provides the guidelines for the board and IGAs, I suppose, to exercise the Attorney General's discretion. As this Court held... It is harder to get relief now than it was at the time he pledged, is it not? No, it's not harder. It may be harder to get to... I don't know. I mean, it's kind of nebulous. I mean, when does... I mean, how can you determine how hard it is to get an affirmative discretionary determination? I mean, that's the real point, and the only point is... Well, he has a heightened... Because he has a crime of violence, you would agree that he has a heightened burden or that the Attorney General has to invoke a heightened burden to get relief. No, the Attorney General has said in such cases that he will not exercise his discretion. Right. But again, it's discretionary. It's completely discretionary, and this Court in Cervantes-Gonzalez v. INS, which is cited in our brief, and Magano-Pazano v. INS, which I believe is also cited in our brief, has held that the denial of discretionary relief doesn't generally implicate an impermissible retroactive application. I think the law is fairly clear. He relies on St. Cyr, but St. Cyr is absolutely... Well, let's say that the Attorney General said if the new regulation would be that the Attorney General would not exercise his discretion at all where there was a violent or dangerous crime. Would that be permissible? Of course, because Congress has vested him with the determination to make such discretionary determinations. And unless it was established that that interpretation was violative of congressional intent, then the regulation... Would there be any retroactivity problem there where it would absolutely cut off an individual's right who had pled guilty earlier to a violent or dangerous crime? No, because it's a discretionary matter. Well, wouldn't that run into a St. Cyr problem if there was no possible opening? No, because, again, the possibility of relief is available. I mean, obviously... But the Attorney General says there is no possibility of relief in a case where there's a crime of violence. That's the hypothetical. I see I'm running out of time. So, you know, I'm not going to dispute whatever conclusion you wish to draw, but that's not the case here, obviously. Well, you know, again, it's not a question of trying to draw a conclusion. What we're trying to understand is the range of discretion that the Attorney General has because the decision made here as to what's retroactive and whether the door is too far closed or open enough is going to affect beyond this case. So it's not just... I understand, Your Honor. While this case is extremely important, the purpose of our questions is not to get you to agree or disagree, but rather to try to test what the limits are so we can understand what the credible rule ought to be. I understand, Your Honor. And the only thing I can suggest is that if the court is interested, and obviously the court is, then we're happy to provide a brief because obviously that argument wasn't made. We didn't have occasion to respond to it. And, I mean, this is a question... This may be a question which needs to be fleshed out if the court is interested in it, and I assume it is. So, I mean, if the court wishes us to file a supplemental brief on an issue which really isn't raised in the case, and I'm not, you know, saying that it shouldn't, you know, we're happy to do so. But I think at this time I'm not really prepared to answer your question. I think the Attorney General would like to think about that. I certainly would like to think about that. Well, when you go back and talk to the Attorney General and when he's done thinking about that, then you might advise him that the attorneys that come to court who make statements with regard to whether or not the Attorney General has certain discretion should be prepared to address the limits of that discretion in light of the adopted regulations. Well, Your Honor, and I'm not arguing with you, I don't... I think I'm prepared to argue everything that is at issue in this case. Perhaps I was wrong in not anticipating that the court would have a question regarding a matter which really wasn't implicated by this, the briefs, and I apologize for that. Your time has expired. Thank you. Thank you, Your Honor. Your Honor, if I may respond as to what is appropriate before this Court. The retroactive application and the St. Cyr argument was raised in the Notice of Appeal to the BIA and it's found on page 42 of the transcript of the record. So that is something that was appropriately raised and is before this Court. And I would further add that the BIA is limited to the regulations and they would not be able to find that the regulations are not constitutional and that the Attorney General's actions were an ultra-virus act. Now, Your Honor, with regards to the discretion that the Attorney General has, the Attorney General's discretion is limited. And I would reiterate in this instance in the 212H waiver, Congress specifically excludes the lawful permanent residents who are aggravated felons from receiving a 212H waiver. Congress does not exclude non-permanent residents. Now, this Court has upheld that non-permanent residents could be held to a lower standard than permanent residents in deciding this and that that does not violate equal protection because it's Congress' choice to do that. But in this instance, Your Honor, I think that by raising it and changing the standard the Attorney General uses, he has, in effect, choosing not to exercise the discretion which gives the law no effect. And in that instance, I think the Attorney General's ultra-virus acts should not be upheld by this Court. Further, Your Honor, I think that taking a look that this case was pending for almost six years with an application for relief before the government, before the Department of Homeland Security, and it was not until three months after the new regulations were promulgated was there a decision by an immigration judge on this. So if you take a look at the whole, Your Honor, I think this case should be remanded with instructions for the judge to consider, first, whether or not I don't believe this section should apply, this hunting standard should apply, and also if this section is found to apply, the judge as the initial fact finder should make a determination whether it was a dangerous or violent crime and not merely a crime of violence or an aggravated felony. Thank you. Thank you. Thank you for your argument. The case of Mejia v. Gonzalez is submitted.
judges: B. Fletcher, McKeown. Whyte